IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | JURY TRIAL DEMANDED |
| *Plaintiff*, | § § | |
| v. | § § § | |
| GIADA TECHNOLOGY, INC., | § § | |
| *Defendant*. | § § § § § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blue Spike, LLC files this complaint against Defendant Giada Technology, Inc. ("Giada" or "Defendant"), alleging seven (7) counts of infringement of the following Patents-in-Suit, separated for convenience into three groups: (1) Blue Spike's ASLR Patents, (2) Blue Spike's Secure Server Patents; and (3) Blue Spike's Trusted Transaction Patents:

**Blue Spike's ASLR Patents:**

1.      U.S. Patent No. 5,745,569, titled "Method for Stega-Cipher Protection of Computer Code" (the '569 Patent);

2.      U.S. Patent No. 8,930,719, titled "Data Protection Method and Device" (the '719 Patent, and collectively with U.S. Patent No. 5,745,569, the "ASLR Patents");

**Blue Spike's Secure Server Patents:**

3.      U.S. Patent No. 7,475,246, titled "Secure Personal Content Server" (the '246 Patent);

4.      U.S. Patent No. 8,171,561, titled "Secure Personal Content Server" (the '561 Patent);

5.      U.S. Patent No. 8,739,295, titled "Secure Personal Content Server" (the '295 Patent, and collectively with U.S. Patent Nos. 7,475,246 and 8,171,561, the "Secure Server Patents");

**Blue Spike's Trusted Transactions Patents:**

6.      U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" (the '116 Patent); and

U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions" (the '011 Patent, and collectively with U.S. Patent No. 7,159,116, the "Trusted Transactions Patents").

### NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

### PARTIES

2.      Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in the Patents-in-Suit, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3.      On information and belief, Giada Technology, Inc. is a company organized and existing under the laws of Florida, with a principal place of business at 1461-3 San Mateo

Avenue, South San Francisco, California 94080. Giada Technology, Inc. may be served through its registered agent, Sam Chu, at that address. On information and belief, Giada Technology, Inc. manufacturers and distributes streaming media players under the brand name "Minix."

## JURISDICTION AND VENUE

4.      This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

5.      The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in this District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

6.      Specifically, Defendant operates a website that solicits sales of the Accused Products by consumers in this District and Texas (*see* Exhibits A & B); has partnered with numerous resellers and distributors to sell and offer for sale the Accused Products to consumers in this District and in Texas, both online and in stores (*see*, *e.g.*, Exhibits C & D), and offers support service and downloads to customers in this District and Texas (*see*

Exhibits E & F).  Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Defendant is subject to personal jurisdiction in the District. *See Luci Bags LLC v. Younique, LLC*, No. 4:16-CV-00377, 2017 WL 77943, at *3 (E.D. Tex. Jan. 9, 2017) ("For venue purposes, a defendant entity is deemed to reside in any judicial district where it would be subject to the court's personal jurisdiction with respect to the civil action in question.") (citing 28 U.S.C. § 1391(c)(2)).

## FACTUAL BACKGROUND

8.      Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

9.      Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

10.     Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys,

deep packet inspection, license code for authorized software and bandwidth securitization.

11.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

12.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2  plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

13.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights*

*Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

14.    Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

### THE ACCUSED PRODUCTS

15.    Defendant makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services that infringe the Patents-in-Suit, including, but not limited to, its Minix Neo, Neo X, Neo X2, Neo X3, Neo X4, Neo X5, Neo x6, Neo X68, Neo X7, Neo X8, Neo X8-Plus, and Neo U1 streaming media players (collectively, the "Accused Products").

16.    Address Space Layout Randomization ("ASLR") is a security technique that protects software by shuffling it in computer memory. Prior to implementing ASLR, modern-day operating systems often loaded software into predictable memory locations. That predictability allowed attackers to pinpoint specific potions of software and manipulate them in unintended ways. In response to this grave threat, many operating systems now utilize ASLR to reduce predictability by shuffling software to random memory locations.

17.    The Android operating system utilizes ASLR technology to protect itself and other software from being compromised. Android began implementing ASLR technology as early as version 2, and advertised more robust implementations by versions 4 and 4.1.

On information and belief, the Accused Products use various versions of the Android Operating System, beginning with version 4.0, and therefore infringe the ASLR Patents.

18.     Defendant's Accused Products also allow playback of streaming video services such as Netflix and HBO, and therefore infringe the Secured Server Patents and the Trusted Transaction Patents.

19.     Defendant has not sought or obtained a license for any of Blue Spike's patented technologies.

20.     Yet Defendant's Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

21.     Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

**COUNT 1:**

**INFRINGEMENT OF U.S. PATENT NO. 5,745,569**

22.     Blue Spike incorporates by reference the allegations in the paragraphs above.

23.     The '569 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

24.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '569 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

25.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '569 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '569 Patent.  Specifically, Defendant imports the Accused Products into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit G).

26.     The Accused Products infringe claims of the '569 Patent, such as Claim 16 which teaches

> A method for copy protecting a software application executed by a computer system, the software application including a plurality of executable code resources loaded in a memory of the computer system, said method comprising the steps of:
>> determining an address within the memory of the computer system associated with each of the plurality of executable code resources; and
>> intermittently relocating each of the plurality of executable code resources to a different address within the memory of the computer during execution of the software application.

27.     Defendant's Accused Products utilize the Android operating system, which employs Address Space Layout Randomization, a security technique that protects software by shuffling it in computer memory (*method for copy protecting a software application ... comprising the steps of: determining an address within the memory of the computer system associated with each of the plurality of executable code resources; and intermittently relocating each of the plurality of executable code resources to a different address within the memory of the computer*). *See* Exhibit H ("Android 4.0 now provides

address space layout randomization … For the uninitiated, ASLR randomizes where various areas of memory (eg. stack, heap, libs, etc) are mapped in the address space of a process."); Exhibit I ("Each instance of an executable will be given a randomized address space layout at execution time.").

28.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '569 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '569 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '569 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '569 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products (*see*, *e.g.*, Exhibits C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused Products.

29.     Defendant had knowledge of the '569 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '569 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '569 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

30.     Defendant's acts of infringement of the '569 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '569 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

31.     On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful and continues to be willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit. Defendant had

knowledge of the Patents-in-Suit, including but not limited to at least one or more of the following:

a.      The '569 patent has been forward-cited as prior art in connection with the examination of at least 300 subsequently-issued U.S. patents, including Microsoft in its patent titled "License-based cryptographic technique, particularly suited for use in a digital rights management system, for controlling access and use of bore resistant software objects in a client computer," Digimarc in its patent titled "Anti-piracy system for wireless telephony," AT&T in multiple patents including one of its U.S. Patent titled "Protected IP telephony calls using encryption," NEC in its U.S. Patent titled "Method and system for protecting digital data from unauthorized copying," Matsushita Electric Industrial in its U.S. Patent titled "Active data hiding for secure electronic media distribution," and multiple other well-known companies and government agencies, including The U.S. Army, Intertrust Technologies, Texas Instruments, Dell Products, Intel, ShieldIP, Borland Software Company, Avaya Inc., Shoretel Inc., and Syndata Technologies; and

b.      in the course of its due diligence and freedom to operate analyses.

32.     On information and belief, Defendant has at least had constructive notice of the '569 Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT NO. 8,930,719

33.     Blue Spike incorporates by reference the allegations in the paragraphs above.

34.     The '719 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

35.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '719 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

36.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '719 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '719 Patent.  Specifically, Defendant imports the Accused Products into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit G).

37.     The Accused Products infringe claims of the '719 Patent, such as Claim 1 which teaches

> A computing device for running application software, comprising:
> an operating system;
> wherein said memory stores an application software;
> wherein said application software comprises (1) a memory scheduler code resource and (2) other code resources;
> wherein said application software is designed to call said memory scheduler code resource; wherein said memory scheduler code resource, when called, functions to shuffle said other code resources in said memory; and
> wherein said memory scheduler code resource is designed to modify a stack frame in said memory.

38.     The Accused Products utilize the Android operating system, which employs Address Space Layout Randomization, a security technique that protects software by shuffling various code resources in computer memory (*application software [that] comprises: (1) a memory scheduler code resource and (2) other code resources; wherein said application software is designed to call said memory scheduler code resource; wherein said memory scheduler code resource, when called, functions to shuffle said other code resources in said memory; and wherein said memory scheduler code resource is designed to modify a stack frame in said memory*). *See* Exhibit J ("Android is a Linux based OS with 2.6.x kernel … All the basic OS operations like I/O, memory management, and so on, are handled by the native stripped-down Linux kernel."); Exhibit H ("Android 4.0 now provides address space layout randomization … For the uninitiated, ASLR randomizes where various areas of memory (eg. stack, heap, libs, etc) are mapped in the address space of a process."); Exhibit I ("Each instance of an executable will be given a randomized address space layout at execution time."); Exhibit K ("ASLR randomizes the base points of the stack, heap, shared libraries, and base executables").

39.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '719 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '719 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '719 Patent.  By making, using, importing offering for

sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '719 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products (*see*, *e.g.*, Exhibits C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused Products.

40.     Defendant had knowledge of the '719 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '719 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '719 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8

(E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

41.    Defendant's acts of infringement of the '719 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '719 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

42.    On information and belief, the infringement of the '719 Patent by Defendant has been willful and continues to be willful. Defendant knew its incorporation of the accused technology in its Accused Products infringed the patents-in-suit. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Defendant had knowledge of the '719 Patent, including but not limited to at least one or more of the following:

a.   The filing of Plaintiff's prior lawsuits asserting the '719 Patent against five major smartphone manufacturers—Xiaomi, Huawei, Infosonics, DDM Brands, and ZTE (consolidated as *Blue Spike, LLC v. Beijing Xiaomi Technology Co. Ltd. et al.* (E.D. Tex.) Case No. 2:15-CV-01785)—which has been widely publicized and reported upon—*see*, *e.g.*, "China's Xiaomi slapped with patent-infringement suit by Blue Spike in US over upcoming Mi 5, Mi 5 Plus smartphones" *South China Morning Post* (Dec. 9, 2015), available at http://www.scmp.com/tech/enterprises/article/1889024/chinas-xiaomi-slapped-patent-infringement-suit-blue-spike-us-over and attached as Exhibit L; and

b.   In the course of its due diligence and freedom to operate analyses.

43.     On information and belief, Defendant has at least had constructive notice of the '719 Patent by operation of law.

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT 7,475,246

44.    Blue Spike incorporates by reference the allegations in the paragraphs above.

45.    The '246 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

46.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '246 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

47.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '246 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '246 Patent. Specifically, Defendant imports the Accused Products into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit G).

48.    For instance, the Accused Products infringe claim 17 of the '246 Patent which teaches

A method for creating a secure environment for digital content for a consumer, comprising the following steps:

sending a message indicating that a user is requesting a copy of a content data set;

retrieving a copy of the requested content data set;

embedding at least one robust open watermark into the copy of the requested content data set, said watermark indicating that the copy is authenticated;

embedding a second watermark into the copy of the requested content data set, said second watermark being created based upon information transmitted by the requesting user;

transmitting the watermarked content data set to the requesting consumer via an electronic network;

receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user;

extracting at least one watermark from the transmitted watermarked content data set;

permitting use of the content data set if the LCS determines that use is authorized; and

permitting use of the content data set at a predetermined quality level, said predetermined quality level having been set for legacy content if the LCS determines that use is not authorized.

Defendant's Accused Products allow playback, upon request and proper authorization, of secured content via Netflix, HBO, and other streaming services (*digital content for a consumer*; *sending message; retrieving a copy of the requested content; transmitting the watermarked content data set; receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user; extracting at least one watermark; permitting use of the content data set if the LCS determines that it is authorized*). (*See, e.g.*, Exhibits A, M & N).

49.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '246 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling,

without license or authority, products for use in systems that fall within the scope of one or more claims of the '246 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '246 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '246 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused ASLR Products (*see*, *e.g*., Exhibits C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.

50.   Defendant had knowledge of the '246 Patent at least as early as the service of this complaint, and has known since then that the Accused Products infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '246 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '246 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014)

("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

*Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

51.    Defendant's acts of infringement of the '246 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '246 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

52.    On information and belief, the infringement of the '246 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '246 Patent, including but not limited to at least one or more of the following:

   a.    In the course of its due diligence and freedom to operate analysis; and

   b.    Due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '246 Patent by operation of law.

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT 8,171,561

53.    Blue Spike incorporates by reference the allegations in the paragraphs above.

54.    The '561 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

55.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '561 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

56. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '561 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '561 Patent. Specifically, Defendant imports the Accused Products into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit G).

57. For instance, the Accused Products infringe claim 9 of the '561 Patent which teaches

> A method for using a local content server (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data; an LCS domain processor for processing digital data; and an LCS identification code uniquely associated with said LCS, said method comprising:
>> said LCS storing in said LCS storage unit a plurality of rules for processing a data set;
>> said LCS receiving via said communications port a first data set that includes data defining first content;
>> said LCS using said domain processor to determine from inspection of said first data set for a watermark, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;
>> said LCS using said first data set status value to determine which of a set of rules to apply to process

said first data set prior to storage of a processed second data set resulting from processing of said first data set, in said LCS storage unit;

said LCS determining, at least in part, from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and

wherein a quality level of legacy means that said first content does not include said watermark.

Defendant's Accused Products allow playback of both secured and unsecured content via Netflix, HBO, and other streaming services (*a method for using a local content server with communications port, storage, domain processor, and unique ID; said LCS storing/receiving data sets/content; LCS inspecting data set for watermark and determining ... unsecure, secure, legacy; wherein a quality level of legacy means that said first content does not include said watermark*). (*See, e.g.*, Exhibits A, M & N.)

58.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '561 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '561 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '561 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '561 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and*

*Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see*, *e.g.*, Exhibits C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.

59.    Defendant had knowledge of the '561 Patent at least as early as the service of this complaint, and has known since then that the Accused Products infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '561 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '561 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

60.    Defendant's acts of infringement of the '561 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'561 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

61.    On information and belief, the infringement of the '561 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '561 Patent, including but not limited to at least one or more of the following:

     a.    In the course of its due diligence and freedom to operate analysis; and

     b.    Due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '561 Patent by operation of law.

**COUNT 5:**

**INFRINGEMENT OF U.S. PATENT 8,739,295**

62.    Blue Spike incorporates by reference the allegations in the paragraphs above.

63.    The '295 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

64.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '295 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

65.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '295 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '295 Patent. Specifically, Defendant imports the Accused Products into the United States; has partnered with numerous resellers to offer for sale and sell the Accused

Products in the United States (*see, e.g.*, Exhibits C & D), generates revenue from sales of

the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade

shows in the United States where it has demonstrated the Accused Products (*see, e.g.*,

Exhibit G).

66.     For instance, the Accused Products infringe claim 13 of the '295 Patent which

teaches

> A method for using a local content server system (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data in non-transitory form; an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and a programmable address module programmed with an LCS identification code uniquely associated with said LCS domain processor; comprising:
>
>> storing, in said LCS storage unit, a plurality of rules for processing a data set;
>>
>> receiving, via said LCS communications port, a first data set that includes data defining first content;
>>
>> said LCS determining whether said first content belongs to a different LCS domain than said first LCS domain;
>>
>> said LCS excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;
>>
>> said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;
>>
>> said LCS determining, using said first data set status value, which of a set of rules to apply to process said first data set; and
>>
>> said LCS determining, at least in part from rights associated with an identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy;
>>
>> said LCS transmitting said first content at the determined quality level.

Defendant's Accused Products allow playback of both secured and unsecured content via Netflix, HBO, and other streaming services (*a method for using a local content server with communications port, storage, domain processor, and unique ID; said LCS storing/receiving data sets/content; excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain; said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy*). (*See, e.g.*, Exhibits A, M & N).

67. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '295 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '295 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '295 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '295 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of

its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see*, *e.g.*, Exhibits C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.

68.  Defendant had knowledge of the '295 Patent at least as early as the service of this complaint, and has known since then that the Accused Products infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '295 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '295 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

69.  Defendant's acts of infringement of the '295 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '295 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

70.   On information and belief, the infringement of the '295 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '295 Patent, including but not limited to at least one or more of the following:

  a.   In the course of its due diligence and freedom to operate analysis; and

  b.   Due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '295 Patent by operation of law.

## COUNT 6:

## INFRINGEMENT OF U.S. PATENT 7,159,116

71.   Blue Spike incorporates by reference the allegations in the paragraphs above.

72.   The '116 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

73.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

74.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '116 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. Specifically, Defendant imports the Accused Products into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see, e.g.*, Exhibits C & D), generates revenue from sales of the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade

shows in the United States where it has demonstrated the Accused Products (*see, e.g.,*

Exhibit G).

75.     The Accused Products infringe claims of the '116 Patent, such as Claim 14 which

teaches

> A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:
> > means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;
> > a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and
> > a means for verifying an agreement to transact between the parties.

Defendant's Accused Products allow playback of Netflix, HBO, and other streaming

services. Netflix uses a digital rights management system called PlayReady, which is a

method for authenticating the transmission of information between two entities by using

unique device IDs and cryptographic keys (*conducting a trusted transactions between at*

*least two parties [by using a] means for uniquely identifying information selected from*

*the group consisting of a unique identification of one of the parties [and] a*

*steganographic cipher for generating said unique identification information ... governed*

*by ... a predetermined key*). *See* Exhibit M at p. 4 ("PlayReady secures content by

encrypting data files. … In order to decrypt these data files, a digital key is required.");

*see also* Exhibit N.

76.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '116 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see*, *e.g.*, Exhibits C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '116 Patent at least as early as the service of this complaint, and has known since then that the Accused Products infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by

actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

77.    Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

78.    On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis; and

    b.    Due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law.

## COUNT 7:
## INFRINGEMENT OF U.S. PATENT 8,538,011

79.    Blue Spike incorporates by reference the allegations in the paragraphs above.

80.    The '011 Patent is valid, enforceable, and was duly and legally issued by the United

States Patent and Trademark Office.

81.    Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '011 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Products, in violation of 35 U.S.C. § 271.

82.    Defendant has been and now is directly infringing by, among other things,

practicing all the steps of the '011 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps

of the '011 Patent. Specifically, Defendant imports the Accused Products into the United

States; has partnered with numerous resellers to offer for sale and sell the Accused

Products in the United States (*see*, *e.g.*, Exhibits C & D), generates revenue from sales of

the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade

shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*,

Exhibit G).

83.    The Accused Products infringe claims of the '011 Patent, such as Claim 36 which

teaches

> A device for conducting trusted transactions between at
> least two parties, comprising:
>     a steganographic cipher;
>     a controller for receiving input data or outputting
>         output data; and
>     at least one input/output connection,
>     wherein the device has a device identification code
>         stored in the device;
>     a steganographically ciphered software application;

> wherein said steganographically ciphered software
> application has been subject to a steganographic
> cipher for serialization;
> wherein said device is configured to
> steganographically cipher both value-added
> information and at least one value-added
> component associated with said value-added
> information;
> wherein said steganographic cipher receives said
> output data, steganographically ciphers said output
> data using a key, to define steganographically
> ciphered output data, and transmits said
> steganographically ciphered output data to said at
> least one input/output connection.

Defendant's Accused Products allow playback of Netflix and other streaming services.

Netflix uses a digital rights management system called PlayReady, is method for

authenticating the transmission of information between two entities by using unique

device IDs and cryptographic keys (*conducting trusted transactions between at least two*

*parties [by using] a device identification code stored in the device …*

*a steganographically ciphered software application; wherein said steganographically*

*ciphered software application has been subject to a steganographic cipher for*

*serialization; wherein said device is configured to steganographically cipher both value-*

*added information and at least one value-added component associated with said value-*

*added information; wherein said steganographic cipher receives said output data,*

*steganographically ciphers said output data using a key, to define steganographically*

*ciphered output data, and transmits said steganographically ciphered output data to said*

*at least one input/output connection*). *See* Exhibit M at p. 4 ("PlayReady secures content

by encrypting data files. … In order to decrypt these data files, a digital key is

required."); *see also* Exhibit N.

84.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '011 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '011 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see*, *e.g.*, Exhibits C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '011 Patent at least as early as the service of this complaint, and has known since then that the Accused Products infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by

actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

85.    Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

86.    On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following:

  a.    In the course of its due diligence and freedom to operate analysis; and

  b.    Due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law.

**REQUEST FOR RELIEF**

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)     enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)     enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Counsel for Blue Spike, LLC*